Thank you, your honor, and may it please the court, and I, too, regret that we're not in Richmond today. This is a strange format for arguing, but I will give it my best. The issue of the scope of deference accorded to an arbitrator under the Federal Arbitration Act is not new to this court. It's not new to common law. It flows out of the U.S. Code, Section 10A of 9 U.S.C. But this court, particularly your honor, Judge King, has dealt with the issue before in patent versus signature insurance, a case that was cited in our brief. And ironically, in that case, the district court judge that did not vacate the arbitrator in our case. And in the patent case, as this court made clear, while there is broad deference to be accorded, it is not absolute deference. And among the reasons, among the several articulated reasons for vacating an arbitrator's award are two that form particular relevance here. One, if the award fails to draw its essence from the contract. Or two, if the award evidence is a manifest disregard of the law. And the court looks at questions of law, as you know, de novo. So draws essence from the contract. What does that mean? That means, as this court explained, that the result is not rationally inferable from the contract. The payment to Mr. Balch simply was not. Manifest disregard of the law means that the arbitrator understands and correctly states the law, but then proceeds to disregard it. Again, that comes from your opinion in patent, Judge King. And here, um, arbitrator Legg did so by understanding and correctly stating the summary judgment standard under federal rule 56. In fact, going on to articulate that summary judgment. Did you all agree that this would be handled pursuant to principles of summary judgment? Well, we agreed that the parties would submit motions for summary judgment, but we did not agree it would be resolved on summary judgment. We simply agreed that that would be part of the process here. Does that answer your question? Okay. Did you, well, is the arbitrator a, you all agree that he was a fact finder in the context of this case, like a bench trial? Had there been a trial, he was the fact finder. But in other words... Well, he was, he found like on this contract that this cap was not in the contract, but it was missing because of a mistake or something, right? Correct. He did make that finding and respectful. I submit that was the manifest disregard of the did not draw its essence from the contract. He put the cap in the contract. Correct. There was no dispute of material fact here that there is no cap written into the contract. Okay. But Mr. Schwarber, what about the contractual provisions providing the incentive compensation is not earned until there have been adjustments, modifications, changes for the purpose of addressing administrative error. And the arbitrator found that this was an administrative error. So I don't see how you can say there was a manifest disregard of the contract. Well... The contract. You just don't like the result. Respectfully, I understand your question, but I respectfully disagree. The arbitrator did two things and he did consider the contract. He did two things. First, he said there are other reasons why Oracle can change a promised bonus. And those are summary judgment is too blunt an instrument to deal with those. And so he found that what he was going to look at only at the summary judgment stage. The only thing he agreed he could look at was this issue of correction of an administrative error. So he narrowed it to scrutiny of the correction of administrative error. But if you look at that in the context of what is an administrative error and whether what Oracle did here was in fact correct in administrative error, that's where the manifest disregard of law is. The mere fact that Oracle, I concede, Oracle retained for itself the discretion to correct an administrative error. If they promise Balch X and the contract writes Y as a typo, they can correct that. If they promise a particular formula and the computation of that formula comes out wrong, inaccurately, they can correct that. That's an administrative error. David, is there any evidence in the record to show that Oracle intended to omit the cap? Yes, there is. What is that evidence? Well, the starting point, I don't mean to be glib about this, but the starting point is the language of the contract, which doesn't have a cap. And then Oracle wrote the contract. Yes, I'm sorry, Judge King, I didn't mean to interrupt you. No, no, that's okay. It seems to me that you're now in a territory where the arbitrator has found that there was an administrative error. And the compensation agreement allowed for correction of administrative error up until the time of payment. So it seems to me then you would have to be able to point to evidence in the record that the arbitrator disregarded, not the original omission of the cap that you're relying on, but actual evidence that this wasn't an administrative error. But you're saying, as I'm understanding you now, that it's sufficient simply to rest on the absence of a cap. No, I'm sorry, I didn't mean to conclude there. The starting point is the absence of a cap. From there comes scrutiny that took just over a month. And we cited this throughout our briefs. It took just over a month of scrutiny with nearly a dozen Oracle people, including in particular, Ed Screven, who ultimately had to approve the and Ed Screven, you may recall, is the same gentleman who ultimately applied the discretion at the end, which I'll get to in a second. So multiple layers look at it, multiple realms of scrutiny look at it within Oracle. Specific questions are asked. Nicole Hoffman specifically, who's charged with looking at this, asks, was there supposed to be a cap in here? She specifically asks, if there was supposed to be a cap, we have to alert people. Gin Oh is another gentleman who's looking at it, and he specifically says, and this is at page 206 of the record, quote, for Dave, his plan does not have a cap. So any reduction would have to be via discretion. Okay, but wasn't there evidence of a template error? There was, there was testimony. Tell us about that. There was evidence that there was a template error that affected more than just Mr. Balch's contract. Yes, and the way this plays out, and the reason why I suggest it's inappropriate for summary disposition is all of the documentary, all of the contemporaneous documentary evidence, which is not only the contract, but internal emails at Oracle that we obtained through discovery and that are all provided in our record show that the cap not only was not in Mr. Balch's contract, but there is no mention of a template error. There is specific inquiry. Why is there not a cap? And there is an explanation provided contemporaneously that Mr. Balch is what's called an EVP minus two. So there's EVP, which is executive vice president, and the way Oracle's staging works, there's EVP minus one, who reports to the EVP, and then there's EVP minus two, which is Mr. Balch's level. And there's a document that says... Robert, I guess maybe I haven't been specific enough, or maybe I haven't been, I don't know, precise enough, but it seems to me that you're in kind of an awkward position here because you were moving for summary judgment, and now you're here telling us that you were denied the opportunity to cross-examine on disputed facts. So what are we supposed to do with that? Here's the answer to that one, Your Honor. And ours is not the first case to have that situation, but as we argued in our summary judgment papers, as well as in our for if Judge Legg had granted us summary judgment in arbitration, and we didn't appeal his denial of our summary judgment, but had he granted us summary judgment, it would be because the four corners of the contract are clear and unambiguous. And what we argued is basic contract principles that based on a clear and unambiguous contract that contains no cap and has a built-in promise of a compensation formula uncapped, we should prevail on our motion for summary judgment. We simultaneously said, Oracle's position is not that the contract contains a cap, but that the contract needs to be read to have inadvertently omitted a cap, that this has to be determined to be an administrative error. And so that requires... Can I ask a separate question? Because you cite to the email at 205 and 206, and I took it that you were citing it as contemporary evidence that they thought about this before, and so it wasn't an administrative error. But that email comes after the deal is signed, right? That email to me seems to suggest, or at least reasonably could be read to suggest, that of course this was an administrative error, because they look at it and say, holy cow, there's no cap here. Shouldn't there have been one? Right? That's after the fact. That post hoc discussion is not evidence, as you suggested, this scrutiny leading up to the signing of it was somehow not an administrative error. There was post hoc discussion. That's what you gave us, right? In trying to tell us what the evidence before was, what you gave us was post hoc discussion. I gave post hoc and pre hoc, if that's such a term. The discussion contemporaneous with preparation by Oracle of its contract to submit to Mr. Balch included scrutiny by the very groups that would have imposed a cap or put in a cap. It included scrutiny that was, and there was evidence of this in the record, multiple reviewers. But the sites you give us to at least ho, you didn't give us a paid site for Hoffman. Those are both post hoc, right? And so those don't actually support you, do they? They support, they do support me, your honor, respectfully. Are they post hoc? Answer that question first. Yes. Yes. They're post hoc. I understand that. Can I ask a different question though? You started when Judge Keenan asked you about this and you said, he called this administrative error, but there was a question of what that is and was this one? Those were the two questions you said. Is there a, what are we looking at? So the arbitrator determined that this was administrative error. Is there a definition section in the contract? Tell me what I'm looking at to say that that is like not plausibly a reading of administrative error such that it was an unmistakable one by the arbitrator. What am I, what am I looking at? What contractual language? Am I looking at black's law dictionary? Tell me what I'm looking at to show that that's an unmistakable legal error. The answer, your honor, is I can't point you to a provision in the contract because there isn't a definition of administrative error within the contract. What I can point you to is what the purported correction was, what judge let, what arbitrator leg decided was the correction was payment to Mr. Balch of what would have been 303% of his quota. And that 303% is explained post facto by saying, oh, there should have been a 250% of his quota cap in the contract. So this is really that plus an additional 50 plus percent, which is $50,000 and change additional that I, Ed Screven, will explain my decision to do by saying, oh, I decided to give him essentially a tip because we took too long to pay him. That defies credulity. This is another example of saying the post hoc discussion you think makes it unmistakable error that ex ante, this was not an administrative error, but instead was a conscious decision. I'm saying the post hoc discussion is all we have. There is no communication prior. I just wanted to make sure. Thank you. I didn't mean to take you so far over time. Thank you, Judge King. That's fine. I will. I haven't talked about the wage act, but I will come back on rebuttal time and bring that in if I may. Let me ask you one question because I want to ask your colleague there when he gets up. Why is it that everything in this in this arbitration proceeding is sealed? There were the it's not everything, but there's on the joint on the joint motion. The the contract. You are using the federal court and sealing up all the papers. We're supposed to be open to the public, transparent. And your honor, I don't mean to dump this on Mr. Canard, but the contract is a government contract that Oracle has and Oracle had certain security concerns about it. So we we agreed to their suggestion that it be sealed. Yes, the contract was sealed. Well, information about this particular contract has been sealed. That, again, is an Oracle issue. It's not Mr. Balch's issue. It's not the claim to be like a military secret or classified or something. I would respectfully defer to Mr. Canard to answer that one. Well, you're the only one I got standing here now. So I three. Yeah, it's there is there. Oracle believes that there is some classification associated with this contract that required the sealing of some specific identifying information. I can't answer it better than that. I just don't know. Okay. And and you all stipulated that it could be sealed. Yes. And the district judge went along with it. That's correct. There's no record made other than that. That's correct. Okay. All right. If you have you got rebuttal time. Yeah. Thank you, Mr. Canard. I thank you, Your Honor. May it please the court, Stephen Canard for Oracle. Mr. Balch cannot be cannot meet the exacting standards for judicial vacator of arbitration awards, which are among the narrowest known in law. Balch's first claim of manifest disregard of the law of summary judgment is waived because he did not raise it below, which is why the district court made no findings on the score for this court to review. Regardless, his challenge fails. And while I'm happy to discuss whether or the reasons why Judge Legg correctly found there is no genuine issue of fact, I would emphasize that is not the standard that that Balch must meet to prove manifest disregard of the law. Balch must prove that Judge Legg identified a clearly defined and applicable rule of law and then chose to ignore it in propounding his decision. That's this court said in Remy and 3S. This is a willfulness standard. So it's not. And that's the difference from an appeal from a summary judgment. Courts have required it, characterized it as requiring a willful flouting of the law that is recognized. More basic than that, Mr. Kennard, on summary judgment, when you grant a motion for summary judgment, when a court does, I always understood like they're going to give Oracle summary judgment. You have to give the facts to the other side. You have to give the facts in the light most favorable to the other side. And in the light most favorable to the other side, you'd have to take that contract as it's written. That's correct, Your Honor. And he did that. And that was not done here. So summary judgment, Rule 56, that principle of summary judgment certainly wasn't complied with at all. Your Honor, again, the standard is whether he chose to flout it. You combined a bench trial with a summary judgment principle and got a judgment. I guess you can do that in arbitration. I guess that's what your position is. In arbitration, you can do about anything you want and get away with it. No, Your Honor, that's not our position. I think he correctly applied Rule 56. And you can see that. In the light most favorable to the plaintiff. He did not do that. Well, Your Honor, I would respectfully disagree. And if I may explain, so there are two options here. The one is, is the omission of a cap an administrative error or did Oracle intend to grant Mr. Balch an uncapped plan as an exception to the generally applicable policy for other EVB-2s? And there is simply no evidence of that whatsoever. He was not the arbitrator found, and this is based on Balch's admissions. He was not promised an uncapped plan. There's no evidence of any discussion or request for a directive for it to be an uncapped plan. And in fact, it's obvious from what happened. You can see these from the emails at 548 to 50. What happened, his plan was simply generated from the template and it was determined that template was an error. So there's no evidence whatsoever as to a cap. And the emails that he points to in the discussion between Ms. Dyer and Ms. Hoffman and Mr. Larson, and those would be at A739 to 740. The question posed by Ms. Hoffman, is this intentional? Because there are only a few folks here without caps, which shows that there was a policy. And then Ms. Dyer looks at the template and she says, I'm seeing that the template is only for EVP directs. And then she said, is the cap not supposed to apply to the people who are not EVP directs? And then Mr. Larson simply replies by pointing to the template and says the cap language would only come into effect with EVP direct. And so when it was investigated, it was determined that that was an error. So there is no evidence that suggests the possibility of an intended exception that would give him an uncapped plan. And all that he can point to is the fact of the face of his contract. And that could be either by error or by intent, but that there is nothing. Once he had four sworn opponents all testify that it was error, there was nothing else. And Mr. Kniridoff, I have a question regarding page 11, Schwaber's brief. He says that Bulch was paid in the first and second quarters of 2015, an uncapped bonus amount. And is this discussed by Ms. Hoffman, the administrator? And I think that's a little misleading. One of the bonuses, the revenue attainment bonus is paid as the revenue is booked. And so you get what under the contract are advances on the bonus. So for the revenue that was booked, he would get advances on that, but those amounts were well below the cap. And therefore the question didn't even arise as whether to apply the cap or not, because these numbers were so far under the cap. So Your Honor, I think that the, and there's no question that the contract, and I believe Judge Keenan adverted to this, the contract specifically gives the authority for Oracle to correct administrative error before it pays bonuses. And the contract of 567 says that employees are not guaranteed commission or bonus payments, and there's nothing earned until there's a final management decision. So we had no contract right to it. And there was really no genuine issue as to whether there was an administrative error or not. But Judge King, I would submit, again, that might've been the standard if this were coming up for appeal. One might say, well, he made an error. He just didn't apply the Rule 56 standards. But that's something different from what is needed to vacate an arbitration award. Because as this court has said, the parties have agreed to the resolution of the facts and the law by the arbitrator. So it's only if he doesn't do his job. He has to have willfully decided, I'm just not going to apply Rule 56. And if you look at Appendix 748- Would it matter? Sorry, I don't want to distract you, but would it matter if your opponent had argued before the arbitrator that summary judgment was not appropriate as opposed to submitting a summary judgment brief of their own? I think it does show both parties thought they could get summary judgment. He did oppose summary judgment on this issue. So I think this court can take that into account. But what I was saying is, I think you have to look, if you see what he says, for example, at 757, after reviewing all the evidence, he says, all the consistent testimony on administrative error is, quote, uncontradicted by evidence that could persuade a reasonable fact finder of the opposite. Then he concludes 763, no material dispute exists concerning these facts of administrative error. So he is not choosing to ignore Rule 56. He is not willfully flouting Rule 56. If you disagree with us that he properly applied Rule 56, that still is not grounds for vacator. This is not an appeal of summary judgment. Your Honor, I would like to turn now to the Maryland wage payment and collection law issue. Judge Legg also did not choose to disregard or ignore a clearly defined legal rule under the Maryland wage law. He identified the statutory language in Appendix 763. He analyzed in depth the precedent and the rules therefrom at 763 to 69, including the Maryland Court of Appeals decision in MedEx. He addressed the highly distinguishable Hausfeld case and concluded that it was wrongly decided. Contrary to Balch's claim, Hausfeld was not binding precedent. A federal district court decision on state law is never binding. It is at most persuasive. And Judge Legg then applied the principles of Maryland law at Appendix 767 to find that the plan bonus was not a promised wage. And he specifically stated at 770 that he would follow the interpretation of Maryland wage law that this court gave in Varghese and the federal district court gave in Sorensen. So such findings foreclose a conclusion of manifest disregard of the law. And therefore, the district court did not commit clear error in finding that he identified the controlling principles, identified and resolved an ambiguity, and then heeded the legal principles he perceived to be correct and on point. And so again, Balch is contesting Judge Legg's interpretation and application of state law, which is not cognizable under the FAA. That alone should dispose of this issue on appeal, but Judge Legg also correctly analyzed the statute. The statute, as both this court and the Maryland Court of Appeals have held, treats a bonus as a wage only if it is both promised for service and if all conditions are fulfilled such that it is due and employee performance is only one such condition. And as this court held in Varghese, the employee must be not only entitled by promise to the bonus, he must be entitled by promise to the bonus, not merely eligible. And that's not the case here. I've already mentioned that the contract says bonuses are not guaranteed. It grants discretion as to pay terms and conditions at any time prior to final grant of a bonus. MedEx is not to the contrary. It addressed a different question. The Court of Appeals there held that a definite bonus for work that the employee had already performed and the wage cannot be withheld from terminated employees, even if the contract so provides. And the reason, and there's no comparable provision here, is that the statute expressly required payment after termination. Hausfeld merely extended that holding to a contract provision that withheld a definite bonus, 5% of annual production, from terminated employees at the employer's discretion. So MedEx actually supports the court's decision in Varghese and the arbitrator's decision here, which derives not only from MedEx, but the prior decision in Whiting-Turner by the Maryland Court of Appeals. And that holds that where a bonus is not promised, but is subject to discretion as to payment in amount, there is no wage, much less a wage that is due. And on the third claim, Your Honor, Volch is challenged to the award as failing to draw its essence from the contract fails. This too is an exceedingly narrow standard, applies only when the result is not rationally inferrable from the contract. This court has held that the standard is not error, but ultra vires action, just like with manifest disregard of the law. So if the arbitrator was even arguably construing the contract, the award must be upheld. And for all the reasons I've given, the Oracle had full power to adjust the contract for administrative error and nothing prevented in that adjustment for it to increase the cap by 50% of Volch's annual target variable. So as the district court held at Appendix 439 to 440, Volch's challenge simply ignores the modified or even misinterpreted the contract. Now my colleague began with the patent decision. That's very distinguishable. That is a case in which there was an arbitration agreement that had no statute of limitations and the arbitrator imported from an earlier arbitration agreement, a one-year statute of limitations and disregarded that the contract specifically said that all he'd applied Massachusetts law as this new arbitration agreement required, then the claim would have been timely. So that is one where there was effectively a rewriting of the contract, which is not present here. And your honor, just addressing a few points on the question about whether there was a template error. I think that's basically undisputed. Mr. Oat discussed that in testimony. District court relied on that. And you see that the only genesis of the lack of the cap was by application of the template. And as I discussed, Ms. Dyer and Mr. Larson only addressed the functioning of the template. And it was later discovered that what had happened, and then the decision was made among the authorities, Mr. Screven and Ms. Katz, that they would correct the administrative error, apply the cap, and then augment the cap by 50% of the annual target variable. As far as the definition of administrative error, your honor, that is actually part of the contract. You will note it's appendix 646 is, and it includes plan elements and formulas. So there's no doubt that this is the kind of administrative error that was contemplated, and it can certainly be unilateral. It does not have to be a mutual mistake as under contract law. So we think that the arbitrator correctly applied Rule 56 and the Maryland wage law. But even if he didn't, one cannot, I think, fairly determine that he willfully flouted Rule 56. I don't believe Judge Legg did that. It's a very demanding standard for a vacator. If there are no more questions, your honor. I ask about sealing all the record here. You didn't say anything about that. Your honor, I wasn't involved earlier, and I apologize. I hadn't anticipated that question. I would defer Mr. Schwaber's explanation. Seems correct. I mean, my understanding of the joint appendix has a confidential version, but also a non-confidential version, and it's primarily payout amounts that doesn't seem that much of the record is. But the general proposition proceedings in the federal courts are in public. That's true, yes. And we have stringent requirements before we seal everything up. You all agreed to it all, and the judge signed all. I understand that to be correct, your honor. But I mean, we had a judicial conference two years back, and we talked about the need for transparency in the courts. Yes, your honor. And that's what I'm thinking about when I ask that question. I understand this concern, your honor. That's fine. I appreciate your work. Thank you. Mr. Schwaber? I mispronounced your name. I probably didn't. No, no, you got it right. It's Mr. Schwaber. Thank you. The absence of a cap in the contract, that's the contract that Mr. Balch agreed to. There is no evidence whatsoever in this record that Mr. Balch ever agreed to a capped contract in his 2015 plan. It is beyond dispute that he never agreed to a capped contract in 2015. So what Oracle is suggesting that is within the arbitrator's discretion and is not arbitrary or capricious, because their discretion cannot be exercised in a manner that is arbitrary or unilaterally, after giving an uncapped contract, and after Mr. Balch has done everything he was required to do, and the evidence is he did it well, he performed his job, the money was earned by Oracle, the largest contract in Oracle's history. After all of that, and after his work is done, which is what Medix says implicates the Wage Act, then Oracle, in correcting an administrative error, can decide at that point, well, let's just change the number. Let's use Mr. Screven's personal whim to do so. He'll decide, well, let's take this number, it'll be the cap plus. We'll call it the cap plus, and we'll call that an administrative error without any prior indication of error, without any communication whatsoever to Mr. Balch of error. That is the definition of arbitrary and capricious. And to do that at summary judgment, when every inference is to be taken in a light most favorable to Mr. Balch, when every factual discrepancy is to be taken in a light most favorable to Mr. Balch, that is the manifest disregard of the law here. And as this court said, and it's the Jacobs versus North Carolina Administrative Office of the Courts case that we cited in our papers, and Judge King, you were part of that decision, principles of summary judgment are violated when a fact finder, quote, fails to credit evidence that contradicts some of its key factual conclusions. In this case, arbitrator Legg could not reach his conclusion without making factual findings about credibility, about the subjective determinations. He ignored clearly conflicting evidence. He dismissed it in his opinion as, quote, confusion that was subsequently clarified. The record evidences a desire, for example, to link Mr. Balch's payment to other team members on this government contracts team to come up with this 53% formulation that Mr. Screven wanted everybody to get because he thought different people on the team shouldn't get different percentages associated with their plans. It evidences modeling that show Mr. Dodson, who is Mr. Balch's boss, who clearly did have a cap, it showed modeling that makes clear in their internal modeling that Mr. Dodson has a cap, that Mr. Balch has no cap, and that Mr. Dodson's cap should be exceeded so that he could get the uncapped amount as well. That's all internal. That evidence may or may not carry the day at trial, but in a light most favorable to the non-movement, it clearly is presented as evidence that needed to be considered here if Rule 56 is going to be followed. I only have less than three minutes left, so I will briefly turn to the Wage Act. The Hausfeld case, which I had the privilege of handling at the trial court, was acknowledged by Judge Legg, but then disregarded. I agree with counsel that that can be looked at, but it is not binding precedent at the trial decision. The MedEx case, which articulates the public policy rationale behind the Wage Act, as does Hausfeld, makes clear, and Judge Chaim said it best in Hausfeld when he said, quote, contractual language between the parties cannot be used to eliminate the requirement and public policy that employees have a right to be compensated for their efforts. That is the purpose of the very purpose of the Wage Act, and we get into a very dangerous paradigm if an employer can, in its contracts, compel arbitration, promise what amounts to an apocryphal wage, reserve for itself some discretion to correct administrative errors defined in whatever fashion to correction of the administrative error specifically, exact performance from their employee, have him finish his performance, then fail to pay that wage and enjoy a complete escape from judicial scrutiny because of deference to be accorded to an arbitrator. That can't be the law. Otherwise, there would be no judicial review. So the notion that this court set forth in the patent case and that other courts have set forth is there is judicial review of an arbitrator's decision and of an arbitrator's discretion. And this 300 plus percent of Mr. Balch's quota that was paid to him it finds no rational relationship to the contract. It finds no rational relationship to the cap had it been in the contract. It's a completely different number. And so the only explanation for it requires an assessment by this arbitrator of credibility of Mr. Screven who says, oh, well, it's the cap plus, and this is how I did it, and this is why I did it at the end, and this is why all 12 of us missed it previously. That is precisely what cannot be done in consistent with the mandates of Rule 56. And for those reasons, we ask that this court vacate the award. Thank you very much, sir. We appreciate the arguments of counsel. Both of you have done a fine job. And if we were in Richmond, we would leave the bench and shake your hands, but we have to do that remotely today. Well, thank you. Thank you very much.
judges: Robert B. King, Barbara Milano Keenan, Julius N. Richardson